IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| NICK RAYMOS | ) | CASE NO. |
| 600 Park St. | ) | |
| Findlay, Ohio 45840 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| MAYVILLE ENGINEERING COMPANY, | ) | |
| INC. | ) | **JURY DEMAND ENDORSED** |
| 6728 State Route 66 North | ) | **HEREIN** |
| Defiance, Ohio 43512 | ) | |
| | ) | |
| **Serve also:** | ) | |
| Mayville Engineering Company Inc. | ) | |
| 715 South Street | ) | |
| Mayville, Wisconsin 53050 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Nick Raymos, by and through undersigned counsel, as his Complaint against the

Defendant, states and avers the following:

**PARTIES**

1. Raymos is a resident of the city of Archbold, county of Hancock, state of Ohio.

2. Mayville Engineering Company, Inc. is a foreign corporation that operates a place of
   business located at 6728 State Route 66 North, Defiance, Ohio 43512.

3. Mayville was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C.
   § 12101 *et seq.*

4. Mayville was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C.
   § 2000e, *et seq.*

5.  Mayville was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

## JURISDICTION & VENUE

6.  This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Raymos is alleging federal law claims under the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 *et seq*., and The Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq*.

7.  This Court has supplemental jurisdiction over Raymos' state law claims pursuant to 28 U.S.C. § 1367 as Raymos' state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9.  Within 300 days of the conduct alleged below, Raymos filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-01722 against Mayville Engineering Corp., operating at 6728 St. Rt. 66 North, Defiance, Ohio 43512.

10. On or about June 7, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Raymos regarding the Charges of Discrimination brought by Raymos against Mayville in EEOC Agency Charge No. 532-2021-01722.

11. Raymos received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

12. Raymos has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Raymos has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

14. Raymos has properly exhausted his administrative remedies pursuant to R.C. § 4112.01 *et seq.*

## FACTS

### (Raymos Requested A Reasonable Accommodation for His Disabilities)

15. Raymos is a former employee of Mayville.

16. Raymos became employed by Mayville on or about November 29, 2020.

17. Mayville employed Raymos as an unloader.

18. Raymos is Hispanic.

19. Anthony Decker was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Mayville who acted directly or indirectly in the interest of Mayville.

20. Decker was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 12101 *et seq.*

21. Decker was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 2000e, *et seq.*

22. Decker was at all times hereinafter mentioned an employer within the meaning of  R.C. § 4112.01, *et seq.*

23. Decker is Caucasian.

24. Scott Last Name Unknown ("Scott LNU") was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Mayville who acted directly or indirectly in the interest of Mayville.

25. Scott LNU was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 12101 *et seq.*

26. Scott LNU was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 2000e, *et seq.*

27. Scott LNU was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01, *et seq.*

28. Scott LNU is Caucasian.

29. At all times hereinafter mentioned, Raymos suffered from diabetes and carpal tunnel syndrome ("Raymos' Disabilities").

30. Raymos takes daily insulin shots for his diabetes.

31. Raymos' diabetes condition substantially limits Raymos' endocrine function.

32. Raymos' Disabilities substantially impaired one or more of Raymos' major life activities including caring for himself, concentrating, thinking, communicating, interacting with others, performing manual tasks, and working.

33. As a result of suffering from diabetes, Raymos is disabled.

34. As a result of suffering from diabetes, Raymos is disabled per 28 C.F.R. § 36.105(b)(2) and (d)(2)(iii)(H).

35. As a result of suffering from carpal tunnel syndrome, Raymos is disabled.

36. As a result of suffering from diabetes, Raymos has a record of a disability.

37. As a result of suffering from carpal tunnel syndrome, Raymos has a record of a disability.

38. As a result of suffering from diabetes, Raymos is and was considered disabled within the meaning of the ADA 42 U.S.C. § 12101 *et seq.*

39. As a result of suffering from carpal tunnel syndrome, Raymos is and was considered disabled within the meaning of the ADA 42 U.S.C. § 12101 *et seq.*

40. As a result of Raymos' diabetes, Raymos is and was considered disabled within the meaning of R.C. § 4112.01 *et seq.*

41. As a result of Raymos' carpal tunnel syndrome, Raymos is and was considered disabled within the meaning of R.C. § 4112.01 *et seq.*

42. In or around November 2020, Raymos informed Decker of his diabetes disability when he began working for Mayville.

43. In or around November 2020, Mayville became aware that Raymos was disabled.

44. In the alternative, Mayville perceived Raymos as being disabled.

45. In the alternative, Mayville perceived that Raymos' medical condition constituted physical limitations.

46. Despite these actual or perceived disabling conditions, Raymos was still able to perform the essential functions of his job with or without reasonable accommodation(s).

47. Raymos felt his workplace was not clean enough to take his insulin shots.

48. Raymos felt that his workplace lacked the privacy to take his insulin shots.

49. Raymos decided to take his daily insulin shots in his car due to his cleanliness and privacy concerns.

50. Raymos took his insulin shots in his car once a day.

51. Raymos was only absent from the factory taking his insulin shots for five minutes every workday during his lunch or break.

52. It was reasonable to allow Raymos to take a five-minute break to administer his insulin shots.

53. It did not pose an undue burden on Defendant to allow Raymos to take a five-minute break to administer insulin shots.

54. In or around January 2021, Decker informed Raymos that employees were complaining that he was going to his car too frequently.

55. After Raymos explained to Decker that he took short breaks in his car to administer his insulin shots, Decker seemed irritated.

56. Decker did not get irritated with non-disabled employees that took short breaks in their car.

57. In or around January 2021, Raymos requested that he be allowed to go to his car for five minutes each day to take his insulin shot ("Raymos' First Reasonable Accommodation Request").

58. As a result of Raymos telling Decker about his diabetes in or around November 2021, Mayville had a record that Raymos had a disability.

59.  As a result of Raymos telling Decker about his diabetes in or around November 2021, Mayville had knowledge that Raymos had a disability.

60. Decker refused to accept Raymos' First Reasonable Accommodation Request to be allowed to go to his car to take his insulin shots.

61. Defendant did not have an interactive discussion with Raymos to determine how they could accommodate Raymos' First Reasonable Accommodation Request.

62. Defendant's failure to have an interactive discussion with Raymos is disability discrimination.

63. On or around January 29, 2021, Raymos' hand began to hurt so badly that he could not close it or pick up anything.

64. On or around January 29, 2021, Raymos' hand began to hurt so badly that he left work approximately 30 minutes early.

65. On or around January 29, 2021, Raymos went to the emergency room at Montpelier Hospital to have his hand examined when the pain became worse.

66. On or around January 29, 2021, the emergency room doctor informed Raymos that he was going to need to have surgery due to his carpal tunnel syndrome.

67. On or around January 29, 2021, the emergency room doctor gave Raymos a note for work, explaining that Raymos was going to need to take time off of work for carpal tunnel surgery.

68. On or around January 30, 2021, Raymos informed Decker that he was going to need to have surgery due to his carpal tunnel syndrome.

69. On or around January 30, 2021, Raymos asked for time off for his upcoming carpal tunnel surgery and recovery time ("Raymos' Second Reasonable Accommodation Request").

70. On or around January 30, 2021, Mayville became aware that Raymos was disabled.

71. In the alternative, Mayville perceived Raymos as being disabled.

72. In the alternative, Mayville perceived that Raymos' medical condition constituted physical limitations.

73. As a result of Raymos telling Decker about his carpal tunnel syndrome in or around January 30, 2021, Mayville had a record that Raymos had a disability.

74.  As a result of Raymos telling Decker about his carpal tunnel syndrome in or around January 30, 2021, Mayville had knowledge that Raymos had a disability.

75. Despite these actual or perceived disabling conditions, Raymos was still able to perform the essential functions of his job with or without reasonable accommodation(s).

76. Decker refused to accept Raymos' Second Reasonable Accommodation Request to be allowed to go to take time off for carpal tunnel surgery.

77. Defendant did not have an interactive discussion with Raymos to determine how they could accommodate Raymos' Second Reasonable Accommodation Request.

78. Defendant's failure to have an interactive discussion with Raymos is disability discrimination.

**(Raymos Experienced Racial Discrimination At Work)**

79. During Raymos' employment, Raymos was the only Hispanic employee in his area of the Defiance plant.

80. During Raymos' employment, Raymos was one of only three Hispanic employees in the entire Defiance plant.

81. Raymos regularly heard other employees making disparaging comments about Hispanic people.

82. Raymos heard employees in the break area say "fucking Hispanics" were flooding the country.

83. Decker had a pattern of treating non-Hispanic employees more favorably than he treated Raymos.

84. Raymos regularly signed up for three overtime days a week.

85. Decker would frequently force Raymos to work more overtime in addition to the three days for which he had already signed up for the week.

86. Decker did not force non-disabled workers to work more overtime in addition to the days for which they had already signed up for the week.

87. Decker did not force workers who were not perceived to be disabled to work more overtime in addition to the days for which they had already signed up for the week.

88. Decker did not force workers who had not requested a reasonable accommodation to work more overtime in addition to the days for which they had already signed up for the week.

89. Decker did not force non-Hispanic workers to work more overtime in addition to the days for which they had already signed up for the week.

90. Decker forced Raymos to work more overtime because of his disability.

91. Decker forced Raymos to work more overtime because of a perceived disability.

92. Decker forced Raymos to work more overtime because Raymos requested a reasonable accommodation.

93. Decker forced Raymos to work more overtime because of his race.

94. As a supervisor, when Decker forced Raymos to work more overtime because of his disability, Decker engaged in disability discrimination.

95. Alternatively, as a supervisor, when Decker forced Raymos to work more overtime because of a perceived disability, Decker engaged in disability discrimination.

96. As a supervisor, when Decker forced Raymos to work more overtime because Raymos requested reasonable accommodations, Decker engaged in disability discrimination.

97. As a supervisor, when Decker forced Raymos to work more overtime because of his race, Decker engaged in race discrimination.

98. On or around January 29, 2021, Decker and Scott LNU called Raymos into their office and claimed that multiple employees had accused Raymos of selling drugs.

99. Decker told Raymos that Raymos dressed like a drug dealer.

100. Decker did not tell non-disabled employees that they dressed like drug dealers.

101. Alternatively, Decker did not tell employees that they did not perceive as being disabled that they dressed like drug dealers.

102. Decker did not tell employees that did not request a reasonable accommodation that they dressed like drug dealers.

103. Decker did not tell non-Hispanic employees that they dressed like drug dealers.

104.  Decker telling Raymos that Raymos dresses like a drug dealer was discriminatory based on his disability.

105.  Decker telling Raymos that Raymos dresses like a drug dealer was discriminatory based on his perceived disability.

106.  Decker telling Raymos that Raymos dresses like a drug dealer was discriminatory based on his request for a reasonable accommodation.

107.  Decker telling Raymos that Raymos dresses like a drug dealer was discriminatory based on his race.

108.  Decker and Scott LNU accused Raymos of selling drugs at the Defiance Factory.

109.  Raymos was not selling drugs at the Defiance Factory.

110.  There is no evidence Raymos sold drugs at the Defiance Factory.

111.  Raymos had never sold drugs in his life.

112.  No investigation was undertaken to ascertain if Raymos sold drugs at the Defiance Factory.

113.  Decker and Scott LNU did not accuse any non-disabled employees of selling drugs.

114.  Decker and Scott LNU did not accuse employees they did not perceive as being disabled of selling drugs.

115.  Decker and Scott LNU did not accuse employees who had not requested a reasonable accommodation of selling drugs.

116.  Decker and Scott LNU did not accuse the non-Hispanic employees of selling drugs.

117.  Decker and Scott LNU accused Raymos of selling drugs because of his disability.

118.  Alternatively, Decker and Scott LNU accused Raymos of selling drugs because of his perceived disability.

119. Decker and Scott LNU accused Raymos of selling drugs because Raymos had requested a reasonable accommodation.

120. Decker and Scott LNU accused Raymos of selling drugs because of his race.

121. Decker and Scott LNU accusing Raymos of selling drugs was discriminatory because of his disability.

122. Alternatively, Decker and Scott LNU accusing Raymos of selling drugs was discriminatory because of his perceived disability.

123. Decker and Scott LNU accusing Raymos of selling drugs was discriminatory because Raymos had requested a reasonable accommodation.

124. Decker and Scott LNU accusing Raymos of selling drugs was discriminatory because of his race.

125. On or around January 29, 2021, Decker and Scott LNU called Raymos into their office and accused Raymos of making a sexist comment to two female employees by allegedly saying "women should stay in the kitchen."

126. On or around January 29, 2021, Decker and Scott LNU accused Raymos of making a sexist comment without having investigated the false allegation.

127. Raymos immediately denied making a sexist comment to anyone.

128. Raymos had not made a sexist comment to anyone.

129. Raymos had never before heard that someone felt he made a sexist comment to anyone.

130. Decker and Scott LNU did not accuse non-disabled employees of making a sexist comment without having first investigated.

131. Alternatively, Decker and Scott LNU did accuse employees that they did not perceive as being disabled of making a sexist comment without having first investigated.

132. Decker and Scott LNU did not accuse employees that did not request a reasonable accommodation of making a sexist comment without having first investigated.

133. Decker and Scott LNU did not accuse non-Hispanic employees of making a sexist comment without having first investigated.

134. Decker and Scott LNU accusing Raymos of making a sexist comment without investigating was discriminatory based on his disability.

135. Decker and Scott LNU accusing Raymos of making a sexist comment without investigating was discriminatory based on his perceived disability.

136. Decker and Scott LNU accusing Raymos of making a sexist comment without investigating was discriminatory based on Raymos' request for a reasonable accommodation.

137. Decker and Scott LNU accusing Raymos of making a sexist comment without investigating was discriminatory based on Raymos' race.

138. There is no evidence Raymos made a sexist comment to any female employee.

139. No investigation was undertaken to ascertain if Raymos had made a sexist comment to any female employee.

**(Mayville Terminated Raymos' Employment)**

140. On or about February 1, 2021, Defendant terminated Raymos' employment.

141. Decker and Scott LNU advised Ramos his employment would be terminated.

142. Defendant's purported reason for terminating Raymos' employment was due to Raymos frequently leaving the factory to go to his car, allegations of Raymos making a sexist comment to female employees, and attendance.

143. Raymos only left the factory for his insulin shots and to eat his lunch.

144. Raymos had not made any sexist remarks to any female employee.

145. Raymos had not been written up for an attendance issue.

146. On or around February 1, 2021, Mayville did not terminate the employment of any non-disabled employees who left the factory for lunch.

147. On or around February 1, 2021, Mayville did not terminate the employment of any employees who Mayville did not perceive to be disabled who left the factory for lunch.

148. On or around February 1, 2021, Mayville did not terminate the employment of any employees who had not requested a reasonable accommodation who left the factory for lunch.

149. On or around February 1, 2021, Mayville did not terminate the employment of any non-Hispanic employees who left the factory for lunch.

150. On or around February 1, 2021, Mayville did not terminate the employment of any non-disabled employees who had allegedly made a sexist comment.

151. On or around February 1, 2021, Mayville did not terminate the employment of any employees who Mayville did not perceive to be disabled who had allegedly made a sexist comment.

152. On or around February 1, 2021, Mayville did not terminate the employment of any employees who had not requested a reasonable accommodation who had allegedly made a sexist comment.

153. On or around February 1, 2021, Mayville did not terminate the employment of any non-Hispanic employees who had allegedly made a sexist comment.

154. On or around February 1, 2021, Mayville did not terminate the employment of any non-disabled employees who had not been written up for attendance.

155. On or around February 1, 2021, Mayville did not terminate the employment of any employees who Mayville did not perceive to be disabled who had not been written up for attendance.

156. On or around February 1, 2021, Mayville did not terminate the employment of any employees who had not requested a reasonable accommodation who had not been written up for attendance.

157. On or around February 1, 2021, Mayville did not terminate the employment of any non-Hispanic employees who had not been written up for attendance.

158. Raymos needed to leave the plant to take his insulin shot as an accommodation for his disability.

159. Raymos needed to take time off for surgery as an accommodation for his disability.

160. Mayville failed to accommodate Raymos' disability when they terminated his employment.

161. Defendant terminated Ramos' employment because of his disabilities.

162. Alternatively, Defendant terminated Raymos' employment because of perceived disabilities.

163. Defendant terminated Raymos' employment because he had requested a reasonable accommodation.

164. Defendant terminated Raymos' employment because of his race.

165. Upon information and belief, Defendant has a progressive discipline policy.

166. Raymos did not receive a verbal warning.

167. Raymos did not receive a written warning.

168. Raymos did not receive a second written warning.

169. By terminating Raymos' employment, Defendant violated its own progressive discipline policy.

170. Upon information and belief, Defendant does not terminate non-disabled employees in violation of its own progressive discipline policy.

171. Upon information and belief, Defendant does not terminate employees Defendant does not perceive to be disabled in violation of its own progressive discipline policy.

172. Upon information and belief, Defendant does not terminate employees who have not requested a reasonable accommodation in violation of its own progressive discipline policy.

173. Upon information and belief, Defendant does not terminate non-Hispanic employees in violation of its own progressive discipline policy.

174. Defendant violated its own progressive discipline policy when it terminated Raymos' employment because of his disability.

175. Defendant violated its own progressive discipline policy when it terminated Raymos' employment because of his perceived disability.

176. Defendant violated its own progressive discipline policy when it terminated Raymos' employment because he requested a reasonable accommodation.

177. Defendant violated its own progressive discipline policy when it terminated Raymos' employment because of his race.

178. Defendant terminated Raymos' employment because of his disability.

179. Defendant terminated Raymos' employment because of his record of disability.

180. Alternatively, Defendant terminated Raymos' employment because of a perceived disability.

181. Defendant terminated Raymos' employment because he requested a reasonable accommodation.

182. Defendant terminated Raymos' employment because of his race.

183. Defendant did not proffer a legitimate non-discriminatory reason for terminating Raymos' employment.

184. As a result of Defendant's conduct, Raymos suffered and continues to suffer damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILIIES ACT

185. Raymos restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

186. During his employment, Raymos suffered from diabetes.

187. As a result of suffering from diabetes, Raymos is disabled.

188. During his employment, Raymos suffered from carpal tunnel syndrome.

189. As a result of suffering from carpal tunnel syndrome, Raymos is disabled.

190. Raymos' conditions constituted a physical impairment.

191. Raymos' disabilities substantially impaired one or more of Raymos' major life functions including caring for himself, concentrating, thinking, communicating, interacting with others, performing manual tasks, and working.

192. Raymos has a record of disability as a result of suffering from diabetes.

193. Raymos has a record of disability as a result of suffering from carpal tunnel syndrome.

194. Alternatively, Defendant perceived Raymos as being disabled.

195. Despite any real or perceived disabilities, Raymos could perform his essential job functions with or without reasonable accommodation(s).

196. Defendant treated Raymos differently than other similarly situated employees based on his actual or perceived disabilities.

197. Defendant discriminated against Raymos based on his actual or perceived disabilities.

198. Defendant violated 42 U.S.C. § 12101 *et seq.* by discriminating against Raymos based on his actual or perceived disabilities.

199. Defendant violated 42 U.S.C. § 12101 *et seq.* by refusing to honor Raymos' First Reasonable Accommodation Request.

200. Defendant violated 42 U.S.C. § 12101 *et seq.* by refusing to honor Raymos' Second Reasonable Accommodation Request.

201. Defendant violated 42 U.S.C. § 12101 *et seq.* by failing to have an interactive discussion with Raymos to determine how they could accommodate Raymos' Reasonable Accommodation Request.

202. Defendant violated 42 U.S.C. § 12101 *et seq.* by failing to have an interactive discussion with Raymos to determine how they could accommodate Raymos' Second Reasonable Accommodation Request.

203. Defendant violated 42 U.S.C. § 12101 *et seq.* by failing to accommodate Raymos' disabilities.

204. On or about February 1, 2021, Defendant terminated Raymos' employment.

205. Defendant violated 42 U.S.C. § 12101 *et seq.* by terminating Raymos' employment based his actual or perceived disabilities.

206. As a direct and proximate result of Defendant's conduct, Raymos suffered and will continue to suffer damages, including economic and emotional distress damages.

## **COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

207. Raymos restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

208. During his employment, Raymos suffered from diabetes.

209. As a result of suffering from diabetes, Raymos is disabled.

210. During his employment, Raymos suffered from carpal tunnel syndrome.

211. As a result of suffering from carpal tunnel syndrome, Raymos is disabled.

212. Raymos has a record of disability as a result of suffering from diabetes and carpal tunnel syndrome.

213. Alternatively, Defendant perceived Raymos as being disabled.

214. Raymos' conditions constituted a physical impairment.

215. Raymos' disabilities substantially impaired one or more of Raymos' major life functions including caring for himself, concentrating, thinking, communicating, interacting with others, performing manual tasks, and working.

216. Despite any real or perceived disabilities, Raymos could perform his essential job functions with or without reasonable accommodation(s).

217. Defendant treated Raymos differently than other similarly situated employees based on his actual or perceived disabilities.

218. Defendant discriminated against Raymos based on his actual or perceived disabilities.

219. Defendant failed to accommodate Raymos' disabilities.

220. Defendant violated R.C. § 4112.01 *et seq*. by discriminating against Raymos based on his actual or perceived disabilities.

221. Defendant violated R.C. § 4112.01 *et seq*. by refusing to honor Raymos' First Reasonable Accommodation Request.

222. Defendant violated R.C. § 4112.01 *et seq*. by refusing to honor Raymos' Second Reasonable Accommodation Request.

223. Defendant violated R.C. § 4112.01 *et seq*. by failing to have an interactive discussion with Raymos to determine how they could accommodate Raymos' First Reasonable Accommodation Request.

224. Defendant violated R.C. § 4112.01 *et seq*. by failing to have an interactive discussion with Raymos to determine how they could accommodate Raymos' Second Reasonable Accommodation Request.

225. Defendant violated R.C. § 4112.01 *et seq*. by failing to accommodate Raymos' disabilities.

226. On or about February 1, 2021, Defendant terminated Raymos' employment.

227. Defendant violated R.C. § 4112.01 *et seq.* by terminating Raymos' employment based on his actual or perceived disabilities.

228. As a direct and proximate cause of Defendant's conduct, Raymos suffered and will continue to suffer damages, including economic and emotional distress damages

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. 2000e, *et seq.*

229. Raymos restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

230. Raymos is Hispanic.

231. Throughout his employment, Raymos was fully competent to perform his essential job duties.

232. Defendant treated Raymos differently than other similarly situated employees based on his race.

233. Defendant violated 42 U.S.C. § 2000e *et seq.* by discriminating against Raymos due to his race.

234. On or about February 1, 2021, Defendant terminated Raymos' employment due to his race.

235. On or about February 1, 2021, Defendant terminated Raymos' employment without just cause.

236. At all times material herein, similarly situated non-Hispanic employees were not terminated without just cause.

237. Defendant terminated Raymos based on his race.

238. Defendant violated 42 U.S.C. 2000e *et seq.* when they terminated Raymos' employment based on his race.

239. Raymos suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 2000e *et seq.*

240. As a direct and proximate result of Defendant's conduct, Raymos has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

241. Raymos restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

242. Raymos is Hispanic.

243. Throughout his employment, Raymos was fully competent to perform his essential job duties.

244. Defendant treated Raymos differently than other similarly situated employees based on his race.

245. Defendant violated R.C. § 4112.01 *et seq.* by discriminating against Raymos due to his race.

246. On or about February 1, 2021, Defendant terminated Raymos' employment without just cause.

247. At all times material herein, similarly situated non-Hispanic employees were not terminated without just cause.

248. Defendant terminated Raymos based on his race.

249. Defendant violated R.C. § 4112.01 *et seq.* when they terminated Raymos' employment based on his race.

250. Raymos suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

251. As a direct and proximate result of Defendant's conduct, Raymos has suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Nick Raymos respectfully requests relief against Defendant as set forth below:

(a) Issue an order requiring Mayville to restore Raymos to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Raymos for compensatory damages, non-compensatory damages, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Raymos' claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Daniel S. Dubow*

Daniel S. Dubow (0095530)
Shashelia Degraffinried (101692)
Kevin A. Buryanek (0099300)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email: daniel.dubow@spitzlawfirm.com
          shelia.degraffinried@spitzlawfirm.com
          kevin.buryanek@spitzlawfirm.com

*Attorneys For Plaintiff Nick Raymos*

## JURY DEMAND

Plaintiff Nick Raymos demands a trial by jury by the maximum number of jurors permitted.

/s/ *Daniel S. Dubow*

Daniel S. Dubow (0095530)
Shashelia Degraffinried (101692)
Kevin A. Buryanek (0099300)
**SPITZ, THE EMPLOYEE'S LAW FIRM**